UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **MEGHAN CONLEY,** | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | **No. 3:23-cv-00128** |
| v. | ) | |
| | ) | |
| **U. S. IMMIGRATION AND CUSTOMS ENFORCEMENT**, | ) | |
| 500 Twelfth Street SW Washington, DC 20536, | ) | |
| | ) | |
| *Defendant.* | ) | |

**FOIA COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**I.    SUMMARY**

1. This is an unusually simple FOIA case. There are no legal nuances, factual ambiguities, or defenses. Without any explanation, Immigration and Customs Enforcement ("ICE" or "Defendant") simply refuses to fulfill any of its statutory FOIA duties to Meghan Conley ("Plaintiff"), even when ordered to do so by the Chief of the ICE Office of the Principal Legal Advisor.

2. For almost a year, Defendant has refused to satisfy the most basic FOIA requirements in this case. Defendant will not search for records, let alone provide them. It will not tell Plaintiff why she is not entitled to records or why it will not search for records. In fact, it has made no timely and appropriate FOIA responses, failing to even render a decision on Plaintiff's expedited processing request. Defendant has yet to even inform Plaintiff whether it will comply with her request.

3. As explained below, the parties' history may play a role in these unusually transparent FOIA violations.

1

4. Accordingly, Plaintiff brings this action against Defendant under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking declaratory and injunctive relief to compel compliance with the requirements of the FOIA and attorneys' fees and costs.

## 2. PARTIES

5. Meghan Conley is a resident of Knox County, Tennessee.

6. Defendant ICE is an agency within the meaning of 5 U.S.C. § 552(1)(f). Defendant ICE has the requested records in its possession.

## 3. JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B). Plaintiffs' request for declaratory and other relief is properly subject to this Court's subject-matter jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(F) and 28 U.S.C. §§ 1331, 2201(a), and 2202.

8. Venue is proper within this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(b)(1), (b)(2), and (e)(1).

9. Plaintiff has constructively exhausted all administrative remedies in connection with her FOIA request, as detailed below.

## 4. FACTS

10. A typical FOIA case disputes the legitimacy of a FOIA denial, whether in whole or in part, or the propriety of FOIA redactions.

11. This is not a typical FOIA case. In this case, Defendant refuses not only to provide Plaintiff any records but also refuses to search for records, communicate with Plaintiff, or explain *why* she is being denied records.

12. This unusual agency response is legally indefensible; under no circumstances can an agency simply refuse to provide the statutorily required response, especially after losing a FOIA administrative appeal.

   *A. A year ago, Plaintiff requested records from Defendant; Defendant effectively ignored and continues to ignore Plaintiff's request.*

13. On April 28, 2022, Plaintiff, through her attorney, made FOIA request 2022-ICFO-17209 seeking correspondence made in 2017-2022 between Defendant and Knox County Sheriff's Office ("KCSO") employees discussing or related to the Knox County 287(g) agreements or ICE IGSAs.

14. Plaintiff knows these records exist because ICE and KCSO have publicly verified the agreement's existence. Plaintiff even possesses some of the requested records, obtained by a public records lawsuit against KCSO.

15. In its first of many FOIA violations, Defendant responded on May 26, 2022, claiming that it had "queried the appropriate program offices within ICE for responsive records. If any responsive records are located, they will be reviewed for determination of releasability."

16. This is not an appropriate response. Defendant should have, at minimum, told Plaintiff whether or not it would comply with her request. *See* 5 U.S.C.A. § 552 (6)(A)(i) (FOIA requires that the agency "(i) determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request *whether to comply with such request* and shall immediately notify the person making such request of- . . . such determination and the reasons therefor;" the right to seek public liason aid, and; the right to appeal and adverse determination).

17. Plaintiff emailed Defendant on August 8, 2022, pointing out that Defendant had so far failed to produce any records.

18. Defendant replied the following day, repeating that the "request is currently pending the search for responsive documents."

19. On August 12, 2022, Plaintiff emailed Defendant, narrowing the scope of her response to exclude invoices and monthly billing.

20. Defendant did not respond.

21. On September 23, 2022, Plaintiff filed an expedited processing request,

22. Defendant did nothing, failing to make a timely determination on Plaintiff's expedited processing request.

*B. Despite Plaintiff's successful appeal, Defendant ignores and continues to ignore its own order to process Plaintiff's FOIA request.*

23. By January 17, 2023, Defendant had issued no statutorily required response to Plaintiff's request. Plaintiff appealed Defendant's failure to provide records in a timely manner.

24. On February 3, 2023, Chief Shiraz Panthaky of the ICE Office of the Principal Legal Advisor ICE granted Plaintiff's administrative appeal and "remand[ed] your appeal to the ICE FOIA Office for processing and re-tasking to the appropriate agency/office(s) to obtain any responsive documents, should they exist." *See* Exhibit 1.

25. Defendant refused to comply with its own remand order and did not provide Plaintiff with the statutorily required response.

26. On March 3, 2023, Plaintiff reminded Defendant that a response was due.

27. Nothing happened. Defendant refused to respond.

28. On March 6, 2023, Plaintiff reminded Defendant that a response was due.

29. Nothing happened. Defendant refused to respond.

30. Plaintiff sent Defendant a final reminder on March 13, 2023.

31. Nothing happened. Defendant decided not to respond.

4

32. Plaintiff has already filed and won an appeal. Defendant ignored this successful appeal and continues to fail to respond to Plaintiff's FOIA request or provide responsive records.

33. By failing to observe FOIA deadlines, Defendant has constructively exhausted FOIA's administrative appellate requirement, preventing the need to file a second appeal: "Any person making a request to any agency for records . . . shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph.

*C. Should this case reveal further evidence that Plaintiff was targeted by Defendant's agents, this Court should initiate an investigation into Defendant's arbitrary and capricious withholding of records.*

34. Under 5 U.S.C. § 552 (a)(4)(F), if this Court orders the production of records and awards attorney fees, it may also "issue[] a written finding that the circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously with respect to the withholding." That written finding triggers a United States Office of Special Counsel proceeding investigating the circumstances of the withholding.

35. Defendant's withholding certainly qualifies as arbitrary and capricious; it has made virtually no effort to comply with the FOIA or engage in any good-faith negotiations with Plaintiff's attorney despite his numerous overtures.

36. As described below, this case may reveal that Defendant's arbitrary and capricious withholding was animated by animosity towards Plaintiff. If that animosity figured at all in Defendant's arbitrary and capricious withholding, this Court should initiate a special counsel investigation.

37. The unusually aggressive actions taken by one of the Defendant's local agents against Plaintiff may explain the unusual nature of this FOIA case and the need for judicial intervention.

38. In 2017, Plaintiff, as a part of her academic research, began seeking records from the Knox County Sheriff's Office related to its 287(g) program and the contractual agreements creating and supporting that program.

39. In 2018, Plaintiff spoke at an ICE 287(g) Steering Committee Meeting, again requesting records from KCSO and ICE.

40. Plaintiff's remarks received significant media attention and were later featured in the 2020 Netflix documentary *Immigration Nation*.

41. Plaintiff did not receive those records. Instead, she had to sue the sheriff in state court under Tennessee's public records law. The media featured Plaintiff in numerous articles.

42. Based on this media coverage, Plaintiff was personally targeted by people viewing her as overly sympathetic to immigrants.

*D. A local ICE agent defamed Plaintiff and threatened a public university with surveillance and repercussions should they fail to punish Plaintiff for "enticing violence against the Government and Law Enforcement employees."*

43. On May 6, 2019, during the lawsuit's pendency, her employer, the university where she serves as a fulltime faculty member, received a complaint from one "Kash Chowhan."

44. In his email, Kash Chowhan claimed to be a "Veteran, a Retired Government Employee and a Father of a student that attends the" university. *See* Exhibit 2.

45. Chowhan is not a retired government employee. He is an active ICE agent at the local Knoxville ICE office.[1]

46. On information and belief, he does not have a child attending the university.

47. Chowhan's email accused Plaintiff of "calling for and enticing violence against Government and Law Enforcement employees." Chowhan also reproduces part of another accusing Plaintiff of

---

[1] *See Zelaya, et. al., v. United States, et. al.*, No. 3:19-cv-00062 (E.D. Tn. 2018) naming "KASHIF CHOWHAN, Deportation Officer, ICE, ERO" as a defendant in a civil rights class action).

being part of an "Antifa" group that supposedly created an "effigy of ICE [with] a noose around its neck" and had engaged in "prior doxing [of ICE employees] and overt calls to violence against ICE officers, acts that the author "personally consider[ed] . . . a threat and an incitement to physical violence toward ICE."

48. Chowhan ended the email by demanding university retribution against Plaintiff for these alleged wrongdoings and threatening to surveil the university and publicize any failure to act:

> If she is not disciplined for this behavior I will be withdrawing my child from your institute and will make sure that the World knows the views you represent. I will be closely monitoring your actions against this and will be forwarding this email to the Board of Education and the Office of the Governor.

49. Chowhan lived up to his promise. That same day, he sent a nearly identical complaint to Tennessee Governor Bill Lee. *See* Exhibit 3. This time, Chowhan promised to "make sure the World knows about the values being taught in public education system in TN" if Plaintiff were not disciplined for her alleged incitement of violence against the federal government.

50. The Department of Justice's Office of Professional Responsibility ("OPR") investigated Chowhan.

51. Plaintiff has filed a FOIA for a copy of OPR's investigation into Chowhan's defamation of Plaintiff.

52. Plaintiff has also filed a meta FOIA request asking for all ICE communications regarding the original FOIA request underlying this Complaint.

*E. An ICE agent's unprecedent threat of reprisal against a university and attempt to retaliate against an academic weighs in favor of a Special Counsel investigation.*

53. Plaintiff is a sociology professor attempting to conduct her research.

54. Plaintiff has not called for and does not condone violence against the United States government, its employees, or public servants generally.

7

55. Plaintiff has not engaged in and does not condone "doxing," the practice of widely distributing personal information online to facilitate invasions of privacy, personal harm or distress.

56. That Defendant's agent would threaten state officials while openly defaming an academic with outrageous allegations indicates an incredible level of hostility towards the Plaintiff.

57. Stonewalling her FOIA requests without even attempting to provide an explanation also indicates a deep disdain for Plaintiff.

58. Defaming academics based on their perceived political views and stonewalling access to records to block research attempts to undermine the very foundation of American academic freedom. *See Adler Et Al. v. Board of Education,* 342 U.S. 485, 510 (1952) (Black, J., dissenting) (When "[t]eachers are under constant surveillance; their pasts are combed for signs of disloyalty; their utterances are watched for clues to dangerous thoughts. A pall is cast over the classrooms. There can be no real academic freedom in that environment. Where suspicion fills the air and holds scholars in line for fear of their jobs, there can be no exercise of the free intellect.")

59. Given the highly antagonistic nature of these actions—and the possibility that some of the requested records might discuss Plaintiff—Plaintiff has no hope of resolving this FOIA case without judicial intervention.

60. If any additional records uncovered during the course of this lawsuit link ICE agent animosity towards Plaintiff and the arbitrary and capricious withholding of records, this Court should order a Special Counsel investigation.

## **CLAIMS FOR RELIEF**

**Count I: VIOLATIONS OF 5 U.S.C. § 552(a)(6)(A): Violations of FOIA Deadlines and Response Requirements**

61. Plaintiff re-alleges and incorporates by reference all allegations in the foregoing paragraphs as if

fully set forth herein.

62. In relevant part, 5 U.S.C. § 552(a)(6)(A) requires an agency to "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of— such determination and the reasons therefor."

63. That an agency might be searching for responsive records is not a determination as to whether a FOIA request will be granted and the reasons underling that determination.

64. Defendant violated and continues to violate this requirement.

65. Defendant first violated this requirement in its May 26, 2022 response, wherein it claimed that it had begun searching for records and "[i]f any responsive records are located, they will be reviewed for determination of releasability."

66. Defendant thus admitted to not having made the required determination.

67. No legal justification exists permitting Defendant to ignore FOIA's clear statutory requirements.

68. Defendant has violated FOIA's deadlines by not making a determination within the required period of time.

69. Plaintiff is therefore entitled to injunctive and declaratory relief requiring Defendant to provide Plaintiff's requested records.

### Count II: VIOLATION OF 5 U.S.C. § 552(a)(6)(A): Violations of FOIA Deadlines and Response Requirements

70. Defendant has again failed to satisfy FOIA's response guidelines by refusing to fulfill the remanded FOIA request.

71. Defendant has made no attempt to provide any FOIA response, let alone a response including the required determination.

72. Defendant has violated FOIA's deadlines by not making a determination within the required period of time.

73. No legal justification exists permitting Defendant to ignore FOIA's clear statutory requirements.

74. Plaintiff is therefore entitled to injunctive and declaratory relief requiring Defendant to provide Plaintiff's requested records.

### Count III: VIOLATIONS OF 5 U.S.C. § 552(a)(6)(E): Failure to Expedite Processing

75. FOIA allows for expedited processing under certain circumstances, 5 U.S.C. § 552(a)(6)(E)(v)(II).

76. An agency must issue a decision on an expedited processing request within ten business days.

77. Plaintiff applied for expedited processing, yet Defendant failed to ever decide Plaintiff's expedited processing request.

78. Plaintiff is therefore entitled to injunctive and declaratory relief requiring Defendant to grant Plaintiff expedited processing.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that this Court:

1. Enter judgment on all counts in favor of Plaintiff and against Defendant.

2. Order Defendant to conduct a prompt and adequate search for all records responsive to the FOIA Requests, determine which, if any, portions of such are records are exempt, and require Defendants to release the remaining portions of these agency records.

3. Order Defendant to produce, within twenty (20) days of the Court's order, or by such other date as the Court deems appropriate, all non-exempt records responsive to the FOIA request, all

segregable records responsive to the FOIA request, and indices justifying the withholding of any responsive records withheld under any claim of exemption.

4. Declare Defendant's withholding under the FOIA unlawful and enjoin Defendant from continuing to withhold all non-exempt records responsive to the FOIA.

5. Award Plaintiff reasonable costs and attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E) and/or 28 U.S.C. § 2412(d)(1)(A).

6. Award Plaintiff such further relief as the Court deems just, equitable, and appropriate.

Submitted this April 12, 2023.

/s/ *Andrew Fels*
Andrew Fels, Esq. BPR #036005
3214 Fountain Park Blvd.
Knoxville, TN 37917
865-567-4881
andrewchristianfels@gmail.com

# CERTIFICATE OF SERVICE

       I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular United States Mail, postage prepaid. Parties may access this filing through the Court's electronic filing system.

                          /s/ *Andrew Fels*
                          Andrew Fels, Esq. BPR #036005
                          3214 Fountain Park Blvd.
                          Knoxville, TN 37917
                          865-567-4881
                          andrewchristianfels@gmail.com