UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| MEGHAN CONLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 3:23-CV-128-TAV-JEM |
| ) | |
| U.S. IMMIGRATION AND CUSTOMS ) | |
| ENFORCEMENT, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

COMES NOW, the United States on behalf of its agency the U.S. Immigration and Customs Enforcement, by and through Francis M. Hamilton III, United States Attorney for the Eastern District of Tennessee, and hereby submits the following Memorandum of Law in Support of its Motion for Summary Judgment.

A. **INTRODUCTION**

This case concerns the United States Immigration and Customs Enforcement's ("ICE") response to an April 2022 Freedom of Information Act ("FOIA") request seeking correspondence between ICE and Knox County Sheriff's Office employees regarding the negotiation and signing of ICE 287(g) agreements or ICE IGSAs between the dates of 2017–2022. ICE has since conducted a reasonable search for records responsive to Plaintiff's FOIA request and released more than 700 pages of documents to Plaintiff. Moreover, ICE properly redacted information from the released records, and withheld other records in full, under FOIA Exemptions 5, 6, 7(C), and 7(E). Because ICE has conducted reasonable searches in response to the Plaintiff's FOIA requests and has not improperly withheld any records the case is now moot. Defendant is entitled to summary

judgment because it has fully complied with its obligations under FOIA.

B.  BACKGROUND

On April 28, 2022, Plaintiff through her attorney made FOIA request 2022-ICFO-17209 seeking correspondence made in 2017-2022 between ICE and Knox County Sheriff's Office ("KCSO") employees discussing or related to the Knox County 287(g) agreements or ICE IGSA's. (Doc. 1 ¶ 13.) Defendant responded on May 26, 2022, stating that it "queried the appropriate program officers within ICE for responsive records. If any responsive records are located, they will be reviewed for determination of releasability." (*Id.* ¶ 15.) Plaintiff was not satisfied with Defendant's response; Plaintiff contends that at a minimum Defendant should have told her whether they would comply with her request. (*Id.* ¶ 16.) Plaintiff followed up by email on August 8, 2022, noting that Defendant had not produced any records as of date. (*Id.* ¶ 17.) Defendant promptly responded on August 9, 2022, stating that a "request is currently pending the search for responsive documents. (*Id.* ¶ 18.) On August 12, 2022, Plaintiff emailed Defendant, narrowing the scope of her response to exclude invoices and monthly billing. (*Id.* ¶ 19.) On September 23, 2022, Plaintiff filed an expedited processing request. (*Id.* ¶ 21.) On January 17, 2023, Plaintiff appealed Defendant's lack of response. (*Id.* ¶ 23.)

On February 3, 2023, Chief Shiraz Panthaky of the ICE Office of the Principal Legal Advisor sent correspondence to Plaintiff stating that ICE has "remand[ed] your appeal to the ICE FOIA Office for processing and re-tasking to the appropriate agency/office(s) to obtain any responsive documents, should they exist." (*Id.* ¶ 24.) Plaintiff alleges that by failing to observe deadlines, she has exhausted FOIA's administrative appellate requirement, preventing the need to file a second appeal. (*Id.* ¶ 33.) Plaintiff mistakenly alleges that ICE has made no effort to comply

with the FOIA or engage in any good faith negotiations with Plaintiff's attorney. (*Id.* ¶ 35.) On April 12, 2023, Plaintiff filed a Complaint for Declaratory and Injunctive Relief. (Doc. 1.) Counts I and II of Plaintiff's Complaint allege violations of 5 U.S.C § 552(a)(6)(A) for failure to adhere to FOIA deadlines and response requirements. (Doc.1 at 8–10.) Count III alleges a violation of 5 U.S.C. § 552(a)(6)(E) for failure to expedite a processing request. (Doc. 1 at 10.) Plaintiff requests that the Court order ICE to 1) "conduct a prompt and adequate search for all records responsive to the FOIA requests, determine which, if any, portions of such are records are exempt, and require Defendants [sic] to release the remaining portions of these agency records;" 2) "produce, within twenty (20) days of the Court's order . . . all non-exempt records responsive to the FOIA request, segregable records responsive to the FOIA request, and indices justifying the withholding of any responsive records withheld under any claim of exemption;" and to 3) "declare [ICE's] withholding under the FOIA unlawful and enjoin [it]from continuing to withhold all non-exempt records responsive to the FOIA." (Doc. 1 at 10–11.)

On July 24, 2023, following communications between Plaintiff's counsel and the undersigned, ICE produced responsive records. (*See* Response Letter Production, Exhibit 24-1.) ICE processed 2004 pages of potentially responsive documents. (*Id.*) Of those 2004 pages, 803 pages were nonresponsive, 473 pages were duplicates, and 343 pages were released in full. (*Id.*) Portions of the remaining 385 pages were withheld in part pursuant to FOIA Exemptions. (*Id.*) In the months following the production, Plaintiff's counsel and undersigned counsel were in constant contact concerning the production. It was, and has been, ICE's position that the search was comprehensive and the production adequate and responsive. Then, on December 14, 2023, while preparing the search declaration for use in the instant Motion for Summary Judgment, ICE

conducted a re-review of withheld documents and supplemented its production with 23 additional documents, lifting certain withholdings. (*See* Supplemental Response Letter, Exhibit 24-2.) This completed the production of documents pursuant to Plaintiff's FOIA request. (*See* Email Confirming Complete Production, Exhibit 24-3.)

ICE conducted a reasonable and diligent search in accordance with the law. Plaintiff has received the records and yet is still not satisfied with the outcome mistakenly believing that certain information is being improperly withheld. Because of this, Plaintiff is requesting that the ICE conduct another search. However, ICE has complied with the FOIA request and has done its due diligence. Therefore, another search is not necessary nor required. Accordingly, there is no longer a genuine issue of material fact and the case is now moot. This Court should grant Defendant's Motion for Summary Judgment.

### III. ARGUMENT

#### A. Legal Standard in FOIA Cases

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Because challenges in FOIA typically involve purely legal questions to an agency's invocation of the FOIA exemptions, most such cases are appropriately decided on motions for summary judgment. *Rimmer v. Holder*, 700 F.3d 246, 255 (6th Cir. 2012); *Odor v. USCIS*, No. 2:20-cv-11198, 2021 WL 2351091, at *2 (E.D. Mich. June 9, 2021) (noting that "district courts typically resolve FOIA claims on summary judgment"). To prevail, the defendant in a FOIA case must show it has made a "good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information" and that any withholding of materials was

4

authorized by statutory exemption. *CareToLive v. FDA*, 631 F3d 336, 341 (6th Cir. 2011); *see also Rimmer*, 700 F.3d at 252. The question is not whether the agency uncovered every single existing document, but rather whether the search was reasonably calculated to discover the requested documents. *Id.* at 340. To meet this burden, an agency "may rely on affidavits or declarations providing reasonable detail of the scope of the search." *Id.* Affidavits or declarations are sufficient to demonstrate compliance with obligations imposed by FOIA in the absence of other countervailing evidence. *Id.* Courts routinely dispose of FOIA on summary judgment based on affidavits from the agency detailing is search before allowing the plaintiff to move forward with discovery. *Id.* Once the agency has demonstrated that there are no material facts in dispute, it is entitled to summary judgment. In the present case, as evidenced by the accompanying Declaration of Fernando Pineiro, FOIA Director for ICE FOIA Office (*See* Declaration of Fernando Pineiro, Exhibit 24-4, hereinafter referred to as "DFP ¶ [ ]), ICE conducted an adequate search for potentially responsive records and any documents withheld or portions redacted, were done so pursuant to proper FOIA exemptions as described in the Declaration.[1]

### B. Defendant conducted an adequate search for responsive records

On summary judgment in a FOIA case, the agency must demonstrate "a good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information." *CareToLive*, 631 F3d at 340. To meet this burden, the agency may rely on reasonably detailed, non-conclusory affidavits or declarations to demonstrate the adequacy of

---

[1] Also included in Fernando Pineiro's Declaration is a description of the documents withheld and redactions with bates numbering where applicable. Because the majority of the redactions are the same in each document, it was set forth in this declaration as opposed to a separate Vaughn index. Where the redaction differs, it is explained fully in the declaration.

the search. *Id.* (citing *Grand Cent. P'ship v. Cuomo*,166 F.3d 473, 289 (2d Cir. 1999)); *Vaughn v. United States,* 936 F.2d 862, 867 (6th Cir. 1991). Such affidavits or declarations are accorded presumption of good faith and cannot be rebutted by purely speculative claims about the existence and discoverability of other documents. *Rugiero v. United States DOJ*, 257 F.3d 534, 547 (6th Cir. 2001) (citing *Bennett v. DEA*, 55 F. Supp. 2d 36, 39 (D.D.C. 1999)); *SafeCard Services, Inc. v. SEC,* 926 F.2d 1197, 1200 (D.C. Cir. 1991); *Hoff v. U.S. Dep't. of Justice*, 2007 WL 4165162 (S.D. Ohio 2007); *see also Maynard v. C.I.A.,* 986 F.2d 547, 560 (1st Cir. 1993) (explaining that an agency's affidavit is "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence of a document"). While those affidavits should be "sufficiently detailed," the agency "'need not set forth with meticulous documentation the details of an epic search for the requested records.'" *Bay Area Lawyers Alliance for Nuclear Arms Control v. U.S. Dep't of State*, 818 F. Supp. 1291, 1294-95 (N.D. Cal. 1992) (quoting *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982)).

In weighing the adequacy of a search, the review focuses on the adequacy of the agency's search, and not on the chance that additional documents exist. *See CareToLive*, 631 F.3d 336 at 341 ("Although agencies must respond to requests under the Act, they are not required to open their doors and invite the public in to peruse their records."); *Citizens Comm'n on Human Rights v. FDA*, 45 F.3d 1325, 1328 (9th Cir. 1995) ("[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate.") The sufficiency of a search is generally determined by the "appropriateness of the methods employed" used to carry it out, "not by the fruits of the search." *Dillard v. Dep't of the Treasury*, 87 Fed. Appx. 524, 526 (6th Cir. 2004) (citing *Iturralde v.*

6

*Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search. . . . . After all, particular documents may have been accidentally lost or destroyed, or a reasonable and thorough search may have missed them." (internal citation omitted))). Accordingly, the failure of an agency "to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004). Here, the Declaration of Fernando Pineiro, FOIA Director of Freedom of Information Act Office at ICE, sets forth the details of the searches conducted thereby establishing the adequacy of its search.

Specifically, Mr. Pineiro explains that, for Plaintiff's FOIA, ICE determined that its component, Enforcement and Removal Operations ("ERO") and Office of Acquisition Management ("OAQ") were the offices most likely to have the responsive records and record systems, and, using its standard procedures, ERO and OAQ conducted routine records searches within their systems. DFP ¶ 28.

### i. ERO's search in response to Plaintiff's FOIA request

On May 26, 2022, the ICE FOIA office tasked the ERO's Information Disclosure Unit's ("IDU") points of contact ("POC") with conducting a search of responsive records. DFP ¶ 31. On November 16, 2022, the ERO IDU POC then sought clarification as to the location of the Knox County Sheriff's Office in Plaintiff's FOIA request as there are two locations. DFP ¶ 32. On February 6, 2023, after adjudication of Plaintiff's administrative appeal, ICE FOIA tasked the ERO with the remanded search. DFP ¶ 22. The ERO IDU POC determined that any potentially

7

Case 3:23-cv-00128-TAV-JEM   Document 24   Filed 01/25/24   Page 7 of 17   PageID #: 111

responsive records, to the extent they exist, were likely maintained within the ERO's Enforcement Division. DFP ¶ 34. The Criminal Apprehension Division ("CAD") of ERO's Enforcement Division is the subdivision that allocates resources and personnel dedicated to the 287(g) Program. DFP ¶ 35. The Unit Chief of ERO's CAD spent three hours searching his email, including sent, deleted, incoming, outgoing, and archived folders, as well as the office's shared computer system, which includes all documents created and maintained by CAD employees, using the search terms "Knox" and "Knox County" with no date range limitation. DFP ¶ 35. On April 5, 2023, twenty-eight potentially responsive records were identified and forwarded to ICE FOIA for review and processing. DFP ¶ 35. Following the filing of this lawsuit, ICE FOIA re-tasked the ERO IDU POC with a search in response to Plaintiff's FOIA request. DFP ¶ 36. At that time, the ERO IDU POC determined that responsive records would be maintained within the ERO's Enforcement Division, ERO's Custody Management Division ("CMD"), and/or ERO's New Orleans Field Office. DFP ¶ 37. The ERO Enforcement Division noted that it responded to the FOIA request on April 5, 2023, and thus it had no additional documents for production. DFP ¶ 38.

ERO's Field Operations Division ("FOPS") exclusively manages the 287(g) program. DFP ¶ 40. The ERO FOPS FOIA POC reviewed Plaintiff's request and tasked the New Orleans Field Office to conduct a search for responsive records. DFP ¶ 41. The Deputy Field Office Director ("DFOD") searched his individual archived emails, including sent, deleted, incoming, outgoing, and archived folders as well as the office's shared drive computer system, which includes all documents created and maintained by the field operations employees. *Id.* He spent half an hour conducting a search on his computer shared drive using the term "Knox County" with no date range as well as his email using the term "@knoxsheriff.org," also with no date range

8

cutoff. DFP ¶ 42. He also submitted a Request for Electronic Data ("RED") ticket request to obtain the former National Program 287(g) Manager and Contracting Officers' emails. *Id.* The RED application captures and preserves all sent, deleted, and received electronic records of all ICE employees. DFP ¶ 43. The RED request ticket sought all electronic data from both the former National Program 287(g) Manager and Contracting Officers and was used because two custodians were no longer with ICE at the time of the search. DFP ¶ 44. The results of this search were in .eml and .msg formats and were provided to the DFOD once the RED search was completed. *Id.* Once the DFOD had all of the files, he opened each individually and manually searched the terms "Knox County" and "@knoxsheriff.org." *Id.* The potentially responsive records were then provided to the ICE FOIA Office for review and processing. *Id.*

The Supervisory Detention and Deportation Officer also spent half an hour searching his computer drive and email using the search terms "agreement," "agreements," "Memorandum of Agreement (MOA)," "Intergovernmental Support Agreement (IGSA)," and "detention," also with no date range cutoff. DFP ¶ 45. The Detention and Deportation Officer serving as the Field Program Manager spent an hour searching his computer's shared drive and emails using the terms "287g agreement," "IGSA," "MOA," and "detention," again with no date range cutoff. DFP ¶ 46. Finally, the Detention and Deportation Officer serving as the National Program 287(g) Manager spent two and a half hours conducting a search of his computer's shared drive as well as his email using the terms "IGSA," "Knox County," "287(g)," "ICE," and "ERO" also with no date range. DFP ¶ 27. All 2,004 potentially responsive records found by ERO were forwarded to ICE's FOIA Office for review and processing. DFP ¶ 48.

    ii.    **OAQ's search in response to Plaintiff's FOIA Request**

9

Case 3:23-cv-00128-TAV-JEM   Document 24   Filed 01/25/24   Page 9 of 17   PageID #: 113

Upon receipt of Plaintiff's request from ICE FOIA on June 8, 2022, OAQ's Acquisition Policy Office ("APO") FOIA POC determined that the OAQ Detention Compliant and Removals Office ("DCR") would likely have responsive documents, if any, because the FOIA request discusses a potential future ERO facility. DFP ¶¶ 51–52. Upon review, the Senior Advisor in the OAQ DCR deferred the request to FOIA because OAQ is not involved in the negotiation and oversight of 287(g) agreements and ICE does not have an IGSA with the KCSO, and therefore, OAQ did not have any responsive records. DFP ¶¶ 52–53. Specifically, as discussed in the declaration, KCSO is a U.S. Marshals Service ("USMS") site. DFP ¶ 53. The USMS allows ICE to ride on the existing IGSA the USMS has with KCSO for detainee bedspace. *Id.* Because Plaintiff requested records concerning either a 287(g) agreement or an IGSA between ICE and KCSO, records between the USMS and KCSO on which ICE is a rider, but not a signatory, was not considered responsive. *Id.* As such, the only component with responsive records was ERO, which were produced to Plaintiff as discussed above.

ICE has complied with its obligation to search for responsive records and has produced an adequate search. Courts have said that "a search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request." *Kohake v. U.S. Dep't of Treasury*, 630 F. App'x 583, 587 (6th Cir. 2015) (quoting *Meeropol v. Meese*, 790 F.2d 942, 956, 252 U.S. App. D.C. 381 (D.C. Cir. 1986)). Here, the search certainly meets the standard of reasonable. Multiple ICE employees in several divisions searched all locations that could reasonably contain the documents requested using extremely broad search terms with no date range. It is quite clear that ICE has conducted a reasonable and adequate search.

    **C.**    **Defendant properly withheld information and documents**

The agency has also properly withheld various information protected from disclosure by one or more FOIA exemptions. 5 U.S.C. § 552(b); *see also Stevens v. State*, 20 F.4th 337, 344 (7th Cir. 2021) (noting that an agency need not release material that "falls under one of the nine FOIA exemptions"). An agency bears the burden of showing that an exemption applies. 5 U.S.C. § 552(a)(4)(B). Here, the agency's declaration adequately describes the withheld material and the justifications for nondisclosure. DFP ¶¶ 54–82; *Simbaqueba v. U.S. Dep't of Def.*, No. 2:11-cv-622012, WL 870862, at *6 (S.D. Ohio Mar. 14, 2012) (noting that summary judgment is appropriate where the affidavits or declarations adequately justify the withholding of documents and "such justifications are reasonable and consistent with the law governing application of the Act's exemptions" (citing *Rugiero*, 257 F.3d at 552)). In this Circuit, Courts have properly awarded summary judgment in actions to enforce disclosure documents under FOIA where the information was properly withheld under the statute's exemption provisions. *See generally Kiraly v. FBI*, 728 F.2d 273 (6th Cir. 1984).

### i. Exemption 5

Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with an agency." 5 U.S.C. § 552(b)(5). To qualify for this exemption, a document must fall within the ambit of the traditional privileges that the government could assert in civil litigation against a private litigant. *Enviro Tech Int'l, Inc. v. EPA*, 371 F.3d 370, 374 (7th Cir. 2004). Those privileges are the attorney client, attorney work-product, and deliberative-process privileges. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975)). Here, ICE withheld information under FOIA exemption (b)(5). DFP ¶¶ 54-62. For example, ICE withheld portions of an email chain as a deliberative process privilege

11

because the email chain contains a discussion between ERO employees concerning the need, and reasoning for, recommended changes to a letter regarding the contemplated 287(g) initiative on the topic of the anticipated need for resources. *Id.* at ¶ 57. Additionally, ICE withheld portions of another email chain in which portions of the discussion concern a recommendation made by a DHS component that was not adopted into the final decision, which clearly falls under the deliberative process privilege. *Id.* at ¶ 58. Further, ICE withheld portions of an email chain containing the opinions and recommendations of an EROLD attorney to their ERO client in their capacity as legal counsel. ¶ 61. Disclosure of these documents/potions of documents would inhibit the candid discussion of issues between employees and hinder the agency's ability to make well-informed decisions and assess risks. Also, discussions between counsel and their client are privileged and withheld from disclosure. All of these withholdings were proper under the statute.

ICE subsequently identified additional documents for production and no longer claims Exemption (b)(5) as to the documents found at Bates 097–115, 578. *Id.* at ¶ 56. Those documents were processed and released to Plaintiff on December 14, 2023. (Exhibit 24-2.)

### ii. Exemption 6

Exemption 6 protects information when its release would be a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982) (noting that Exemption 6 is broadly interpreted to encompass all information applying to a particular individual stating that the "exemption [was] intended to cover detailed Government records on an individual which can be identified as applying to that individual"). To determine whether releasing information would constitute a "clearly unwarranted invasion of personal privacy," the court balances the interest of protecting a person's private affairs against

12

the public's right to governmental information. 456 U.S. at 599. The only relevant public interest in the FOIA balancing analysis is the extent to which disclosure would shed light "on the agency's performance of its statutory duties." *U.S. Dep't of Def. v. Fed. Labor Rel. Auth.*, 510 U.S. 487, 495 (1994) (quoting *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 773 (1989)). Here, ICE withheld information under Exemption 6[2] to protect the names, contact information, domain names, email addresses, phone numbers, and signatures of federal law enforcement officers and other government employees. DFP ¶ 69. No public interest in the disclosure of this type of information exists because its release would not shed light on ICE's activities or add to the public's knowledge of their fulfillment of their statutory duties. The privacy interests in the information outweigh the (nonexistent) public interest, so the information is properly exempt from release under Exemption 6. 5 U.S.C. § 552(b)(6); *see also Favish*, 541 U.S. at 172 (noting that where privacy concerns are involved, the burden is on requester to demonstrate sufficient public interest in disclosure); *Labor Rel. Auth.*, 510 U.S. at 494–99 (releasing personal information of third parties and agency employees does not contribute significantly to public understanding of government's operations or activities). Furthermore, due to the increased number of threats directed towards ICE employees in recent years, there is a strong need to protect ICE employees from unwanted contact, harm, or harassment by withholding any identifying information. DFP ¶ 71. Additionally, withholding of the identities of law enforcement personnel is proper under Exemption 6 in recognition of the stigmatizing connotation carried by the mere mention of individuals in law enforcement matters. DFP ¶ 72. Thus, ICE properly withheld information under Exemption 6.

---

[2] In conjunction with Exemption 7(C) as discussed in further detail in Subsection iii.

### iii. Exemption 7

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," if the disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy" (Exemption 7(C)), or if the disclosure "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law" (Exemption 7(E)). *See* 5 U.S.C. § 552(b)(C), (E). Here, ICE properly withheld information under Exemption 7(C) to protect the names, identification codes, phone numbers, and signatures of federal law enforcement officers and other government employees. DFP ¶¶ 67-74. ICE also properly withheld under Exemption 7(C) personally identifiable information of third parties, including names, case numbers, social security numbers, alien numbers, addresses, email addresses, and phone numbers. *Id.* ICE also properly withheld information under Exemption 7(C) to protect personal information in law enforcement records, the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy. *Id.* Exempting documents under 7(C) is necessary due to the increased number of threats directed towards ICE employees in recent years in order to protect ICE employees from unwanted contact, harm, or harassment. DFP ¶ 71. Additionally, withholding of the identities of law enforcement personnel is proper under 7(C) because of the stigmatizing connotation carried by the mere mention of individuals in law enforcement matters. DFP ¶ 72. Thus, ICE properly withheld information under Exemption 7(C).

Further, ICE applied Exemption 7(E) to withhold sensitive information related to techniques and procedures for facility security and staffing, detainee observation, codes and links

14

to law enforcement databases and/or systems, and operations statistics. DFP ¶ 77. Improper disclosure of such information could assist parties in circumventing the law and avoiding detection by providing them a blueprint of what law enforcement officers use in their enforcement and security of their facilities. DFP ¶ 78. This disclosure of this information would only harm the agency and serves no public benefit, nor would it assist the public in its understanding of how ICE carries out its statutory duties. Therefore, ICE properly withheld information under Exemption 7(E).

### C. There is no available relief for Counts I and II for violation of 5 U.S.C. § 552(a)(6)(A) and Count III for violation of 5 U.S.C. § 552(a)(6)(E)

Finally, whether Defendant complied with 5 U.S.C. § 552(a)(6)(A) has no bearing on whether it improperly withheld documents. Instead, an agency's failure to comply with the 20-day determination timeframe outlined in 5 U.S.C. §552(a)(6)(A), simply provides the requester with a direct path to judicial review through the concept of "constructive exhaustion" of administrative remedies. *Carter v. United States*, 2017 WL 1044771, *5 (S.D. Ohio Mar. 20, 2017); *see also* 5 U.S.C. § 552 (a)(6)(C)(i). The penalty for an agency's failure to comply with the 20-day determination requirement is that an agency loses its ability to administratively handle the request and can be sued in district court. 5 U.S.C. § 552 (a)(6)(C)(i). It does not, in fact, entitle a party to actual production of records. Plaintiff has already availed herself of the benefit of ICE's failure to comply with the 20-day timeframe allotted under 5 U.S.C. §552(a)(6)(A) by surpassing the requirement that she exhaust administrative remedies and therefore proceeding directly to district court to file the instant lawsuit. Additionally, a failure to comply strictly with the statutory deadlines, especially where the delay is attributed to the administrative processing of the request, does not necessarily mean that a lawsuit is necessary to obtain the requested information. *See*

15

*Simon v. United States*, 587 F. Supp. 1029, 1031-1032 (D.D.C. 1984). Although, Defendant took an extended time to respond, it did not mean that it was not going to respond, and in fact did respond. Finally, as it relates to 5 U.S.C. § 552(a)(6)(E), "[a] district court of the United States shall not have jurisdiction to review an agency denial of expedited processing of a request for records after the agency has provided a complete response to the request." 5 U.S.C. § 552(a)(6)(E)(iv). Accordingly, there are no additional remedies which this Court can provide for alleged violation of 5 U.S.C. § 552(a)(6)(A), (E) other than what Plaintiff has already availed herself of.

## IV. CONCLUSION

In conclusion, it is undisputed that Plaintiff's Complaint only sought to compel a response to her April 28, 2022 FOIA request. It is also undisputed that ICE has fully responded. A comprehensive search was performed in good faith and all responsive documents were provided to Plaintiff on July 24, 2023, and supplemented on December 14, 2023. To the extent any documents were redacted, these redactions were appropriate under the FOIA as explained above and in the accompanying declaration. In short, there is no further relief this Court can order that has not already been given. Thus, there is no "live," justiciable controversy that remains to be adjudicated and this case should be dismissed with prejudice.

        **Respectfully submitted,**

        FRANCIS M. HAMILTON III
        United States Attorney

By:   */s/ Nicole A. Gross*
        Nicole A. Gross, (Virginia Bar No. 93038)
        Assistant United States Attorney

800 Market Street, Suite 211
Knoxville, Tennessee 37902
Nikki.Gross@usdoj.gov
Telephone: (865) 545-4167

**CERTIFICATE OF SERVICE**

I hereby certify that on January 25, 2024, a copy of the foregoing **Defendant's Memorandum of Law in Support of Motion for Summary Judgment** was electronically filed. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

*/s/ Nicole A. Gross*
Nicole A. Gross
Assistant United States Attorney