IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| MEGHAN CONLEY, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) No. 3:23-cv-00128 |
| v. | ) |
| | ) |
| U. S. IMMIGRATION AND CUSTOMS ENFORCEMENT, | ) |
| | ) |
| *Defendant.* | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

"Mr. Fels:
This [December 20, 2019] letter is the final response to your Freedom of Information Act (FOIA) request to U.S. Immigration and Customs Enforcement (ICE), dated October 09, 2019. You have requested requesting[sic] *any IGSA between ICE and the Knox County Sheriff's Office in Knox County, Tennessee.* ICE has considered your request under the FOIA, 5 U.S.C. § 552. A *search of the ICE Office of Acquisition Management for records responsive to your request produced 36 pages that are responsive to your request*."

-Immigration and Customs Enforcement response to FOIA request from Plaintiff's counsel, December 20, 2019 (Exhibit 1).

ICE's Motion for Summary Judgment fails because its Declaration fails because it agrees that ICE has never completed its search. ECF 24-4. The Freedom of Information Act ("FOIA") requires an agency to search all locations likely to contain responsive records. ICE designated its Office of Acquisition Management ("OAQ") as a location reasonably likely to contain responsive records, but OAQ refused to conduct that search, unilaterally deciding that it could not possibly have responsive records. That is not how FOIA works. Until that search takes place and responsive records produced, ICE cannot win its summary judgment motion.

1

Even if ICE had carried its burden, as indicated by the FOIA response quoted above, ICE admitted previously admitted to Plaintiff's counsel to having an intergovernmental services agreement ("IGSA" or "IGA") with the Knox County's Sheriff's Office ("KCSO") and that it keeps those records in OAQ. This admission undercuts ICE's rationale for not searching OAQ: that OAQ has no contact with the KCSO 287(g) agreement and ICE has no responsive IGSAs. Plaintiff has substantial additional evidence proving OAQ interaction with both the KCSO 287(g) agreement and IGSA. ICE still refuses to acknowledge the existence of its IGSA with KCSO.

Because ICE has not completed its search and because ICE has responsive records remaining in OAQ, this Court should deny ICE's Motion for Summary Judgment, grant the Plaintiff's Motion for Judgment on the Pleadings, and order a complete search, including a search of OAQ for 287(g) and IGSA records.

## I. LAW

### A. Standard of Review

"[I]n FOIA litigation, 'the burden is on the agency to sustain its action.'" *Cincinnati Enquirer v. DOJ*, 45 F.4th 929, 934 (6th Cir. 2022) (quoting 5 U.S.C. § 552(a)(4)(B)). Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To prevail on summary judgment [in FOIA], the government must show that it made a good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information and that any withholding of materials was authorized within a statutory exemption." *Kohake v. Dep't of Treasury*, 630 F. App'x 583, 587 (6th Cir. 2015) (quoting *Rimmer v. Holder*, 700 F.3d 246, 255 (6th Cir. 2012)); *see also Oglesby v. United States Dep't of Army*, 287 U.S. 920 F.2d 57, 68 (1990) ("In order to obtain summary judgment the agency must show that it

2

made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.") The agency must make this showing so clear as to leave "beyond a material doubt" that it conducted an adequate search. *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984); *see also Morley v. CIA*, 508 F.3d 1108, 1115 (D.C. Cir. 2007); *Nation Magazine, Washington Bureau v. U.S.*, 71 F.3d 885, 887 (D.C. Cir. 1995) (reversing district court's grant of summary judgment because the Customs service failed to demonstrate "beyond material doubt" that its search was adequate and its withholdings under 7(c) were lawful); *Truitt v. Department of State*, 897 F.2d 540, 543 (D.C. Cir. 1990) (applying the material doubt standard). Where a "review of the record raises substantial doubt, particularly in view of 'well defined requests and positive indications of overlooked materials,' an agency cannot meet its burden of demonstrating beyond material doubt that it conducted an adequate search." *Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (quoting *Founding Church of Scientology v. Nat'l Sec. Agency*, 610 F.2d 824, 837 (D.C. Cir. 1979)).

In support of summary judgment, a defendant agency must provide "a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." *Duenas Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 313-14 (D.C. Cir. 2003) (quoting *Valencia-Lucena*, 180 F.3d at 326); *Rugiero v. United States DOJ*, 257 F.3d 534, 547 (6th Cir. 2001) ("In discharging this burden, the agency may rely on affidavits or declarations that provide reasonable detail of the scope of the search." (citing *Bennett v. DEA*, 55 F. Supp. 2d 36, 39 (D.D.C. 1999)). "In FOIA cases, summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not

called into question by contradictory evidence in the record or by evidence of agency bad faith." *Varnum LLP v. United States Dep't of Labor*, No. 1:18-cv-1156, 2021 U.S. Dist. LEXIS 74388, at *9 (W.D. Mich. Mar. 15, 2021) (quoting *Aguiar v. Drug Enf't Admin.*, 865 F.3d 730, 734-35, (D.C. Cir. 2017)).

### B. The Sixth Circuit places great emphasis on an agency's heavy FOIA summary judgment burden.

"At all times the burden is on the agency to establish the adequacy of its search." *Kohake*, 630 F. App'x at 587 (citing *Rugiero*, 257 F.3d at 547). And as for all summary judgment motions, in FOIA "[t]he moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact. The moving party may meet this burden either by affirmatively producing evidence establishing that there is no genuine issue of material fact or by pointing out the absence of support in the record for the nonmoving party's case. Once the movant has discharged this burden, the nonmoving party . . . must point to specific facts supported by evidence in the record demonstrating that there is a genuine issue for trial." *Perrusquia v. TVA*, No. 3:22-CV-309, 2023 U.S. Dist. LEXIS 172897, at *6 (E.D. Tenn. Sep. 27, 2023) (cleaned up) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002)). And, just as for all summary judgment, all evidence must be considered in the light most favorable to the nonmoving party. *See, e.g., CareToLive v. FDA*, 631 F.3d 336, 341 (6th Cir. 2011); *see also Askew v. United States*, No. 05-CV-200-HRW, 2006 U.S. Dist. LEXIS 82776, at *11 (E.D. Ky. Nov. 13, 2006) (examining FOIA standard of review). "To defeat a motion for summary judgment the requestor must identify specific deficiencies in the agency's response." *CareToLive*, 631 F.3d. at 341-42.

### C. Unlike ICE's Declaration, an adequate FOIA declaration plausibly attests, based on personal knowledge, to a search of all locations likely to contain responsive records.

A successful FOIA declaration must, based on personal knowledge and not that of third party, s*ee* Fed. R. Civ. Pro. 56(c)(4), properly "invoke the 'magic words' concerning the adequacy of the search — namely, the assertion that [it] searched *all* locations likely to contain responsive documents." *Huntington v. United States DOC,* 234 F. Supp. 3d 94, 103-04 (D.D.C. 2017) (Boasberg, J.) (emphasis in original) (quoting *Bartko v. United States DOJ*, 167 F. Supp. 3d 55, 64 (D.D.C. 2016)). Even if a declaration spans great lengths and provide otherwise admirable detail, without the declarant's plausible and unqualified assurance of having searched *all* locations likely to contain responsive records, a court "is constrained to conclude that the agency's account of its search is nonetheless facially flawed." *Id.* In *Huntington*, an agency's detailed forty-page declaration alleged "only that [it] 'identified offices reasonably likely to have responsive information and those offices conducted a reasonable search for responsive records." *Id.* "Such attestations may come close, but they ultimately do not pass muster." *Id.* at 103-04 (D.D.C. 2017) (citing *Oglesby,* 920 F.2d at 68 (finding search deficient notwithstanding agency's assertion that "a search was initiated of the Department record system most likely to contain the information which had been requested"); *Am. Immigration Council v. Dep't of Homeland Sec*., 950 F. Supp. 2d 221, 230 (D.D.C. 2013) (deeming declaration inadequate despite agency's claim that it searched the offices "most likely to possess records responsive to [Plaintiff's] request")).

## II. FACTS

**A. ICE's FOIA response letter omitted mentioning the limited scope of its search.**

Plaintiff's April 28, 2022 FOIA request expressly sought "correspondence between ICE and Knox County Sheriff's Office employees regarding the negotiation and signing of ICE 287(g) agreements or ICE IGSAs between the dates of 2017-2022." Complaint, ECF 1 at ¶ 13. Note the breadth of the language used. Plaintiff did not request records from particular officials or

program office, but essentially all responsive correspondence within ICE for the specified date and topic. ICE divides itself into five program offices: Enforcement and Removal Operations, Homeland Security Investigations, Management and Administration, Principal Legal Advisor, and Professional Responsibility.[1] Plaintiff did not request a search of a particular directorate because Plaintiff is not an ICE employee and does not know where ICE might store responsive records.

On July 24, 2023. Defendant finally responded to Plaintiff's FOIA request by providing some records accompanied by a letter. ECF 24-1. The letter stated in relevant part that "ICE has considered your request under the FOIA, 5 U.S.C. § 552, and processed 2004 pages of potentially responsive documents. Of those 2004 pages, ICE determined that 803 pages were nonresponsive, 473 pages are duplicates and 343 pages will be released in full. Portions of the remaining 385 pages will be withheld." Plaintiff reasonably assumed that ICE had searched all program offices.

### B. But for having previously acquired ICE-KCSO correspondence, Plaintiff would have never known that ICE had not actually searched all program offices.

ICE never volunteered that it had limited its search to only one of its five directorates. Plaintiff had previously acquired responsive OAQ records from prior FOIAs. *See* Exhibits 1 and 2. Those records and records like them were entirely missing from ICE's record production. In an email, Plaintiff's counsel inquired as to why the production omitted these key records.

Plaintiff's pointed inquiry forced ICE to reluctantly disclose that it had never searched OAQ. But for these previously acquired records, Plaintiff would have believed no more responsive records existed and ended this lawsuit.

---

[1] https://www.ice.gov/leadership/organizational-structure

6

Case 3:23-cv-00128-TAV-JEM   Document 25   Filed 02/15/24   Page 6 of 15   PageID #: 154

ICE still has yet to search OAQ.

**C. ICE's declaration fails for admitting that OAQ is likely to have responsive records yet also admitting that OAQ was never searched.**

ICE's declaration fatally impales itself by admitting to not having searched locations it also determined were likely to have responsive records.

To fulfill its FOIA obligations, ICE needed to search all places likely to contain responsive records; it admits that it has not done so. The declaration acknowledges that ERO and OAQ were designated as places likely to have records, ECF 24-4, ¶ 28, and that "[b]ased on the information ERO and OAQ personnel provided regarding the searches conducted within those offices, all locations reasonably likely to contain responsive records were searched." *Id.* ¶ 28. But OAQ admits to conducting no search. *Id.* ¶ 53.

1. *ICE's FOIA process empowers its FOIA Office to determine which places are likely to contain responsive records and order a search.*

    As ICE's Declaration describes, it is the ICE FOIA Office who determines what places are likely to contain responsive records. When a FOIA request arrives at ICE, it is the ICE FOIA Office that "identifies the program office(s) likely to possess responsive records and tasks the appropriate program office(s) to conduct the necessary searches. . . a search for responsive records." ECF 24-4. ¶ 22. The ICE FOIA Office is uniquely equipped to use its "subject matter expertise and knowledge of agency record systems" to determine which program office should be tasked with searches. *Id.* ¶ 28. Once tasked, the searches must be conducted "[i]n conformity with the ICE FOIA Office's instructions." *Id.*¶ 22. Once the program offices searches are complete, the program offices turn over the resulting records to the ICE FOIA Office who then "reviews the collected records for responsiveness." *Id.*

7

## 2. ICE's FOIA Office ordered OAQ to search for responsive records yet OAQ refused to search, preventing ICE from completing a good faith search tailored to find responsive records.

Here, the ICE FOIA Office ordered a search of ERO and OAQ for 287(g) and IGSA records: "[b]ased on its review of Plaintiff's FOIA request and based on its subject matter expertise and knowledge of agency record systems, the ICE FOIA Office determined that ERO and OAQ, were the offices likely to have responsive records." *Id.* ¶ 28. OAQ was included likely because it serves as ICE's business arm, managing deals between ICE and outside contractors like KCSO. *See id.* at ¶ 49. It would be strange beyond question if ICE's business and contracting division had no records relating to contracts requiring constant payments and accounting.

OAQ then determined that the request should be referred to OAQ's Detention Compliance and Removal Office ("DCR").[2] OAQ then ignored the ICE FOIA Office's search orders and declared itself to have no responsive records. The critical paragraph for the entire Declaration is paragraph 53:

> OAQ deferred this FOIA Request to ERO because: (1) OAQ is not involved with the negotiation and overseeing of 287(g) agreements and (2) ICE does not have an InterGovernmental Service Agreement ("IGSA") with the Knox County, TN Sheriff's Office ("KCSO") and, therefore, OAQ did not have any responsive records. KCSO is a U.S. Marshalls Service ("USMS") site, meaning that the USMS has a signed IGSA with KCSO for KCSO to house USMS detainees there. The USMS allows ICE to ride on the existing IGSA the USMS has with KCSO for detainee bedspace. Under this arrangement, ICE can place task orders that fund the housing of ICE detainees with KCSO under the USMS IGSA. Because the Plaintiff requested records concerning either a 287(g) agreement or an IGSA between ICE and KCSO, records pertaining to the IGSA between the USMS and KCSO on which ICE is a rider, but not a signatory, would not have been considered responsive.

---

[2] Paragraph 51 states that OAQ referred the request to DCR because the request concerns "a potential future ERO facility." Plaintiff's FOIA request concerns an existing facility, not one planned for the future.

8

So OAQ admits "defer[ing]"and disobeying the order to search for records based on *its* determination that it would have no responsive records. not based on a search that discovered no records. OAQ's justification for this denial is immaterial.

III.    ARGUMENT

**A.  ICE's Declaration admits to never having conducted a search of all places likely to have responsive records.**

To even present a declaration capable of shifting the burden to Plaintiff, ICE's Declaration needed the declarant—not some other party unaccountable to the Court—to say, without qualifiers, that all locations likely to contain responsive records had been searched and non-exempt records made available. *See* Fed. R. Civ. Pro. 56(c)(4) (requiring personal knowledge); *Huntington,* 234 F. Supp. 3d at 103-04. It did not. ICE's Declaration admitted that its FOIA Office designated OAQ as a location likely to contain responsive records and ordered OAQ to search. ECF 24-4 ¶ 28 ("[b]ased on its review of Plaintiff's FOIA request and based on its subject matter expertise and knowledge of agency record systems, the ICE FOIA Office determined that ERO and OAQ, were the offices likely to have responsive records.") OAQ admitted that it conducted no search at all based on its independent determination that it had no responsive records. *See* ECF 24-4, ¶ 53. Thus, the efforts described by ICE's Declaration fall far, far short of "a good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information, "*Kohake,* 630 F. App'x at 587. Refusing to search a location determined to have responsive records is simply not a sufficient search under FOIA.

And while it may invoke *Huntington's* magic words, the Declaration affirms a search of all places likely to contain responsive records based on third party statements that, by its own telling, say that no such search occurred. ECF 24-4 ¶28 ("[b]ased on the information ERO and

9

OAQ personnel provided regarding the searches conducted within those offices, all locations reasonably likely to contain responsive records were searched.").

Plaintiff respectfully submits that these internal contradictions destroy any claim to ICE having conducted an appropriate search.

B. **OAQ understood exactly what records Plaintiff seeks and should be made to search for those records.**

OAQ's justifications for refusing to search also reveal that OAQ knows exactly what records Plaintiff seeks, and because it knows what records are sought, it must search for them.

First, it decreed that "OAQ is not involved with the negotiation and overseeing of 287(g) agreements" and thus records are likely not housed there, a determination it is not qualified to make. Next, OAQ declined to search for IGSA records based on *its* legal conclusion that, while it does in fact pay KCSO to house ICE detainees, it does not have an "IGSA" because KCSO actually houses detainees under a contract between KCSO and the U.S. Marshalls Service and ICE is merely a rider on this contract. Thus, as OAQ reasons, this agreement is not an agreement between ICE and KCSO and thus not responsive to Plaintiff's requests.

This simply does not align with FOIA's requirements, ICE's internal FOIA procedure, or the terms of Plaintiff's request. Again, Plaintiff requested "correspondence between ICE and Knox County Sheriff's Office employees regarding the negotiation and signing of ICE 287(g) agreements or ICE IGSAs between the dates of 2017-2022." So if OAQ has any correspondence between itself and KCSO regarding any 287g agreements or IGSAs related to ICE made during the target dates, regardless of the precises parties to those agreements, those records must be disclosed.

Ultimately, "FOIA requests are not a game of Battleship." *Gov't Accountability Project v. Dep't of Homeland Security*, 335 F. Supp. 3d 7, 12 (D.D.C. 2018). "The requestor should not

have to score a direct hit on the records sought based on the precise phrasing of [their] request." *Id.* The well-established rule giving legal force to this basic principle is the agency's "duty to construe a FOIA request liberally." *Nation Magazine, Washington Bureau v. U.S.*, 71 F.3d 885 (D.C. Cir. 1995) (citing *Truitt v. Dep't of State*, 897 F.2d 540, 544-55 (D.C. Cir. 1990); *Church of Scientology v. NSA*, 610 F.2d 824, 836-37 (D.C. Cir. 1979)).

OAQ should liberally construe Plaintiff's FOIA request to include the KCSO-related IGSA records in its possession. Plaintiff's request was already sufficiently specific as to allow OAQ to identify the records sought. OAQ cannot now refuse to search because it thinks Plaintiff's request is incorrect. OAQ's attempts to deny record access based on procrustean wordplay and gamesmanship fall far short of the liberal request construction FOIA contemplates.

**C. Even if ICE had shifted its burden of persuasion, Plaintiff can prove that OAQ's failure to search prevented discovery of responsive records, barring summary judgment.**

*1. OAQ employees remain in constant contact with KCSO regarding its 287(g) agreement and IGSA.*

Further undercutting OAQ's denials of possessing any 287(g) or IGSA records, Exhibit 2 is a sample from series of emails between KCSO personnel and OAQ employees discussing the ICE IGSA from the time period covered by the FOIA request.

The very first page of Exhibit 2 shows Natasha Abbington, whose signature identifies her as an ICE contract specialist working for OAQ, sending a December 4, 2019 email, titled "Knox County Sheriff IGA 2019. Pdf" to KCSO employees. This email states "Good Afternoon, Per mail sent on 11/26, please return with signature. Thanks." A KCSO employee responds the next day: "I am waiting for the Mayor to sign and return to me."

The 2018 email exchange on pages 2 and 3 show ICE employee Michelle Britton, her signature also identifying her as an OAQ contract specialist, sending a September 28, 2018 email titled

11

"Knox County Agreement 74-13-0015" to a KCSO employee. The email states that "[t]he attached document requires a signature to authorize ICE as a rider on U.S. Marshalls Service Agreement 74-13-0015 for detention beds space at Knox County." Later in the exchange, Britton states: "Please provide a status update on ICE receiving the signed Agreement by COB Friday November 9, 2018. Please consider that ICE has been funding this agreement without a signed Order.

There are many other similar communications. Plaintiff possesses myriad other records showing constant contact between KCSO and OAQ employees as KCSO bills OAQ for housing ICE detainees.

As described below, Plaintiff submits that Exhibit 1 provides yet even more proof of the existence of an ICE-KCSO IGSA and that OAQ houses responsive records of that IGSA. OAQ has, as it admits, not searched for these records.

2. *ICE has an ICE-KCSO IGSA and has previously acknowledged the existence of the ICE-KCSO IGSA.*

As quoted at the beginning of this filing, in 2019, Plaintiff's counsel filed a FOIA request with ICE on her behalf requesting "any IGSA between ICE and the Knox County Sheriff's Office in Knox County, Tennessee." In response, ICE searched only a single program office: OAQ. And that search returned responsive records. *See* Exhibit 1.

So by its very admission, in an official letter bearing its seal and signed by an ICE FOIA officer, ICE has acknowledged its IGSA with KCSO and produced records proving the existence of that IGSA. And the records following the letter show agreements and various payments made by ICE OAQ to KSCO under the parties 287(g) and IGSA.

This evidence is incontrovertible and, without anything more, provides sufficient grounds for denying ICE's Motion for Summary Judgment.

Moreover, after ICE denied OAQ records as responsive, claiming no ICE IGSA, Plaintiff communicated to ICE that it had previously acknowledged having an IGSA and again requesting production of relevant records. *See* Exhibit 3 (November 21, 2023 email between counsel). A "court evaluates the reasonableness of an agency's search based on what the agency knew at its conclusion rather than what the agency speculated at its inception." *Campbell v. DOJ*, 164 F.3d 20, 28 (D.C. Cir. 1998) (FBI claim of adequate search undermined "once the FBI discovered information suggesting the existence of documents that it could not locate without expanding the scope of the search"). Because "the fundamental principle animating FOIA is public access to government documents" agencies responding to FOIA requests must "make more than perfunctory searches and, indeed, follow through on obvious leads to discover requested documents." *Valencia-Lucena*, 180 F.3d at 325.

Here, after having its misunderstanding correct by evidence of an ICE IGSA's existence, the appropriate action would have been to follow up by searching OAQ records, sparing further filings. ICE did not.

**D. Exemption challenges should be deferred until after ICE's second search.**

Plaintiff appreciates ICE's reconsideration of certain instances of applied exemptions. *See, e.g.,* ECF 24-4, ¶ 56, 60. However, Plaintiff's position is that she is entitled to judgment on the pleadings on the grounds that ICE agreed to having not completed a proper search or determination, a defect it has yet to correct. Thus, Plaintiff would be premature in cross moving for summary judgment on exemptions would be premature when ICE is voluntarily reviewing its redactions and has yet to make a full disclosure of responsive records.

**IV.    CONCLUSION**

ICE has failed to carry its burden and prove an adequate search for responsive records. Plaintiff respectfully requests that the Court deny ICE's Motion for Summary Judgment, grant her Motion for Judgment on the Pleadings, and order ICE to conduct a full search for responsive records, including a search of OAQ for 287(g) and IGSA records.

To avoid any need to revisit this issue, any full search should also expressly include a required keyword search of OAQ employee emails sent to or between any email address ending with knoxsheriff.org between 2017 to 2022.

Respectfully submitted this 15th day of February 2024.

/s/ Andrew Fels
Andrew Fels, Esq. TN BPR #036005
Al Otro Lado
3214 Fountain Park Blvd.
Knoxville, TN 37917
865-567-4881
andrew@alotrolado.org

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular United States Mail, postage prepaid. Parties may access this filing through the Court's electronic filing system.

/s/ Andrew Fels
Andrew Fels, Esq. TN BPR #036005
Al Otro Lado
3214 Fountain Park Blvd.
Knoxville, TN 37917
865-567-4881
andrew@alotrolado.org