UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| MEGHAN CONLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 3:23-CV-128-TAV-JEM |
| | ) |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, | ) |
| | ) |
| Defendant. | ) |

**<u>DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**

COMES NOW, the United States on behalf of its agency U.S. Immigration and Customs Enforcement ("ICE"), by and through Francis M. Hamilton III, United States Attorney for the Eastern District of Tennessee, and hereby submits the following Reply in Support of its Motion for Summary Judgment.

Plaintiff in her Response claims that because she previously received an Intergovernmental Services Agreement ("IGSA") involving ICE and the Knox County Sheriff's Office from a 2019 FOIA request this is evidence that ICE has failed to conduct an adequate search of records for her 2022 FOIA request. Specifically, it is her contention that because ICE previously produced an IGSA from a search of the office of ICE's Office of Acquisition Management ("OAQ") in relation to her 2019 FOIA request, that that same office absolutely must have "correspondence between ICE and Knox County Sheriff's Office ("KCSO") employees regarding the negotiation and signing of ICE 287(g) agreements or ICE IGSAs between 2012-2022" as requested in her 2022 FOIA request.[1] (Doc. 24-1.)

---

[1] This lawsuit centers on the Plaintiff's 2022 FOIA Request No. 2022-ICFO-17209, not the 2019 request Plaintiff discusses in her Response.

Plaintiff's 2022 request specifically sought records regarding the *negotiation* and *signing* of these agreements. The ICE FOIA Office, in determining what offices *might* have responsive records, tasked two *potential* offices with the search of these records: OAQ and Enforcement and Removal Operations ("ERO"). After reviewing the FOIA request, OAQ determined that because it did not manage the negotiation nor maintenance of the 287(g) agreements, it "did not have any records responsive to the tasking." (Doc. 24-4, ¶ 10.) Initially, it is up to the ICE FOIA Office to determine the offices *likely* to have responsive documents based on its knowledge and understanding of ICE's agency record systems. (*Id.* at ¶ 28.) It is then up to the selected offices to "review the substance of the request" and determine, "based on their knowledge of the program office's duties and mission and based on their knowledge of the manner in which [the office] routinely keeps the records," whether the individual units would be "reasonably likely to have responsive records, *if any*." (*Id.* at ¶ 50.) From there, the request is sent to the appropriate units within that particular office for searching. (*Id.*)

In this case, upon receipt of Plaintiff's request, a senior advisor in the OAQ Detention Compliance and Removals Office ("OAQ DCR"), the office within OAQ that was determined likely to have records, if any, reviewed the request. (*Id.* at ¶ 51.) The OAQ DCR Senior Advisor, who "prepares internal operating guides for OAQ DCR as well as external correspondence for vendors and contractors, who is familiar with the OAQ file systems and contracting applications, deferred the FOIA request to ERO." (*Id.* ¶ 52.) As Plaintiff points out in her Response, the critical paragraph in ICE's Declaration, states that based on his knowledge and expertise, he deferred the request because,

> (1) OAQ is not involved in the negotiation and overseeing of 287(g) agreements and (2) ICE does not have and Inter-Governmental Service Agreement with the

2

> Knox County, TN Sheriff's Office ("KCSO") and, therefore, OAQ did not have any responsive records. KCSO is a U.S. Marshalls[sic] Service ("USMS") site, meaning that the USMS has a signed IGSA with KCSO for KCSO to house USMS detainees there. The USMS allows ICE to ride n the existing IGSA the USMS has with KCSO for detainee bedspace. Under this arrangement, ICE can place task orders that fund the house of ICE detainees with KCSO under the USMS IGSA. Because Plaintiff requested records concerning either a 287(g) agreement or an IGSA between ICE and KCSO, records pertaining to the IGSA between the USMS and KCSO on which ICE is a rider, but not a signatory, would not have been considered responsive.

(*Id.* at ¶ 53.) Contrary to Plaintiff's contention that this paragraph is critical because it shows that OAQ ignored orders to search for records, this paragraph is critical because it clearly and succinctly explains the reason OAQ's DCR Senior Advisor determined it was unlikely to have any documents responsive to the request and therefore deferred to ERO. OAQ's justification for not searching is in fact material as it is illogical for an office to search for records that are not reasonably likely to exist within a certain department and establishes that Defendant conducted a reasonable search.

In its Declaration, ICE has reasonably described the offices selected for searching, the reason for the selection, and the offices, in this case only ERO, ultimately determined to have responsive records. Plaintiff is seeking records outside the scope of what she requested in her FOIA. The burden is on the party seeking the information in a FOIA request to "reasonably describe[] such records." 5 U.S.C. § 552(a)(3); *Davidson v. Fed. Bureau of Prisons*, No. 17-5429, 2017 WL 8897005, at *4 (6th Cir. Nov. 29, 2017). While there is no bright-line or categorical standard to determine if the FOIA request reasonably describes the sought record, *see Nat'l Sec. Couns. v. CIA*, 898 F. Supp. 2d 233, 278 (D.D.C. 2012), *aff'd*, 969 F.3d 406 (D.C. Cir. 2020) ("[W]hether a particular FOIA request 'reasonably describes' the records sought is a highly context-specific inquiry."), the D.C. Circuit provides that the linchpin to the analysis is whether

3

the "agency is able to determine precisely what records are being requested." *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 388 (D.C. Cir. 1996); *Bristol-Myers Co. v. F.T.C.*, 424 F.2d 935, 938 (D.C. Cir. 1970) *cert. denied*, 400 U.S. 824, 91 (1970) ("[W]ould be sufficient if it enabled a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort."). Additionally, "an agency [is not] required to identify, after the fact, those pre-existing documents. . .. which are not identified by the party seeking disclosure." *N. L. R. B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 162 (1975).

ICE FOIA determined what entities might have responsive documents. Those entities, in turn, determined whether they were the appropriate offices based upon knowledge and expertise of their own offices and then conducted a search accordingly. Plaintiff claims that OAQ should have conducted a search, but this claim is based on her own misunderstanding of ICE offices and her inadequately crafted FOIA request. ICE's Declaration has definitively and extensively established that it conducted reasonable searches in response to the Plaintiff's FOIA request, produced records responsive to that request, and has not improperly withheld any records. Thus, the case is now moot, and Defendant is entitled to summary judgment.

          **Respectfully submitted,**

          FRANCIS M. HAMILTON III
          United States Attorney

By:    */s/ Nicole A. Gross*
       Nicole A. Gross, (Virginia Bar No. 93038)
       Assistant United States Attorney
       800 Market Street, Suite 211
       Knoxville, Tennessee 37902
       Nikki.Gross@usdoj.gov
       Telephone: (865) 545-4167