UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| MEGHAN CONLEY, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) No.: 3:23-CV-128-TAV-JEM |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court are plaintiff's motion for judgment on the pleadings [Doc. 18] and defendant's motion for summary judgment [Doc. 23]. The parties have responded and replied to each respective motion [Docs. 19, 20, 25, 26]. Accordingly, these matters are ripe for review. *See* E.D. Tenn. L.R. 7.1(a). For the reasons below, defendant's motion for summary judgment [Doc. 23] is **GRANTED**, and plaintiff's motion for judgment on the pleadings, which the Court treats as a motion for summary judgment[1] [Doc. 18] is **DENIED**.

### I. Background

This case arises from plaintiff's Freedom of Information Act ("FOIA") request seeking correspondence from the United States Immigration and Customs Enforcement ("ICE") [Doc. 1, p. 3]. On April 28, 2022, plaintiff requested materials between ICE and the Knox County Sheriff's Office ("KCSO") regarding "the negotiation and signing of ICE

---

[1] While this motion is styled as a motion for judgment on the pleadings [*see* Doc. 18], the Court construes it as a motion for summary judgment. Fed. R. Civ. P. 12(d). *See infra* Section III(A).

287(g) agreements or ICE IGSAs between the dates of 2017 to 2022" [Doc. 24-4, p. 2].[2] Under FOIA, ICE was then required to "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) . . . whether to comply with such request and . . . notify the person making such request . . ." 5 U.S.C.A. § 552(a)(6)(A)(i). On May 26, 2022, exactly 20 days later, ICE informed plaintiff that it had "queried the appropriate program offices within ICE for responsive records" [Doc. 24-4, p. 2].

Over the next several months, ICE undertook plaintiff's requested search [*Id.* at 2–3]. The ICE FOIA Office directed the Office of Acquisition Management ("OAQ") and Enforcement and Removal Operations ("ERO") to execute a search per plaintiff's requested terms [*Id.*]. OAQ informed the FOIA Office that it "did not have any records responsive to the tasking," so ICE subsequently focused its search within ERO [*Id.* at 3]. Plaintiff and ICE exchanged correspondence related to the scope of the requested search and an expedited processing request; however, ICE did not produce any responsive documents for approximately one year [*See id.* at 3–4].

On April 12, 2023, having not received any records from ICE [*Id.* at 4], plaintiff commenced this civil action [Doc. 1]. Plaintiff alleged (i) two violations of 5 U.S.C. § 552(a)(6)(A) for failure to adhere to FOIA requirements and deadlines and (ii) a violation

---

[2] An IGSA, or intergovernmental service agreement, is defined as "[a] cooperative agreement between ICE and any state, territory or political subdivision for the construction, renovation or acquisition of equipment, supplies or materials required to establish acceptable conditions of confinement and detention services." Off. of Immigr. & Customs Enf't, Operations Manual ICE Performance-Based National Detention Standards, 470 (2011). Examples of IGSA services include "bed space for ICE detainees . . . clothing, medical care, food and drink, [and] security . . ." *Id.*

2

of 5 U.S.C. § 552(a)(6)(E) for failure to expedite a processing request [*Id.* at 8–10]. Thereafter, ICE identified 2,004 pages of responsive documents within ERO, which it reviewed and processed prior to release [Doc. 24-4, p. 13].

In part because ICE has produced responsive documents to plaintiff during this litigation, plaintiff's arguments have evolved since the filing of her complaint [*Compare* Doc. 1, p. 1 ("Defendant will not search for records, let alone provide them") *with* Doc. 25, p. 6 ("Defendant finally responded to Plaintiff's FOIA request by providing some records accompanied by a letter")]. Presently, plaintiff appears primarily to object to ICE's alleged failure to search OAQ for responsive documents [Doc. 25, p. 6 ("But for [defendant's statements regarding OAQ], [p]laintiff would have believed no more responsive records existed and ended this lawsuit")]. In her view, "any full search should also expressly include a required keyword search of OAQ employee emails sent to or between any email address ending with knoxsherrif.org between 2017 to 2022" [*Id.* at 14]. Importantly, plaintiff does not appear to object to the manner in which ICE ERO conducted its search [*See id.* at 9–13]. She also does not object to ICE's application of FOIA exemptions five, six, or seven, arguing that "[e]xemption challenges should be deferred until after ICE's second search" [*Id.* at 13].

Plaintiff initially moved the Court for judgment on the pleadings on December 19, 2023 [Doc. 18]. Even after ICE produced responsive documents, plaintiff maintains that she is entitled to judgment on the pleadings and she "would be premature in cross moving for summary judgment . . . when ICE is voluntarily reviewing its redactions and has yet to

3

make a full disclosure of responsive records" [Doc. 25, p. 13]. Defendant, on the other hand, now moves for summary judgment on grounds that ICE produced the requested documents and plaintiff's "case is now moot" [Doc. 24, p. 1]. Defendant explains the applicability of each invoked FOIA exemption and attaches a declaration of Fernando Pineiro, the FOIA Director of the ICE FOIA Office [*see* Doc. 24-4].

## II.     Standard of Review

Most challenges to an agency's use of a FOIA exemption involve purely legal questions; therefore, district courts typically resolve these cases on summary judgment. *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 544 (6th Cir. 2001). A district court reviews the government's assertion of exemptions and decision to withhold documents *de novo*. 5 U.S.C. § 552(a)(4)(B). FOIA requires agencies of the government to release records to the public upon request, unless one of nine statutory exemptions applies. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975). "To prevail on summary judgment, the government must show that it made a 'good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information' and that any withholding of materials was authorized within a statutory exemption." *Rimmer v. Holder*, 700 F.3d 246, 255 (6th Cir. 2012) (quoting *CareToLive v. FDA*, 631 F.3d 336, 340 (6th Cir. 2011)).

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence in the light most favorable to the

4

nonmoving party and makes all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may meet this burden either by affirmatively producing evidence establishing that there is no genuine issue of material fact or by pointing out the absence of support in the record for the nonmoving party's case. *Id*. at 325. Once the movant has discharged this burden, the nonmoving party can no longer rest on the allegations in the pleadings and must point to specific facts supported by evidence in the record demonstrating that there is a genuine issue for trial. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).

In the context of FOIA, the agency bears the burden of establishing its compliance, including whether any claimed exemption applies. *See* 5 U.S.C. § 552(a)(4)(B); *see also Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003). Once the agency meets its burden, a plaintiff must show that the agency "(1) improperly (2) withheld (3) agency records" in order to prevail. *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989) (quoting *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980)); *see also* 5 U.S.C. § 552(a)(4)(B). "Ordinarily, an agency will offer detailed affidavits, rather than the requested documents themselves, to justify its decision to withhold information, and these affidavits are entitled to a presumption of good faith absent evidence to the contrary." *Rimmer*, 700 F.3d at 255 (citing *Jones v. FBI*, 41 F.3d 238, 242–43 (6th Cir. 1994)). And "[i]f the Government fairly describes the content of the material withheld

5

and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the government's position." *Rugiero*, 257 F.3d at 544 (quoting *Cox v. U.S. Dep't of Justice*, 576 F.2d 1302, 1312 (8th Cir.1978)) (citing *Ingle v. U.S. Dep't of Justice*, 698 F.2d 259, 265 (6th Cir.1983), *overruled on other grounds by U.S. Dep't of Justice v. Landano*, 508 U.S. 165 (1993)).

### III. Analysis

#### A. Procedural Posture of Pending Motions

Plaintiff contends that her pending motion for judgment on the pleadings remains intact despite defendant's motion for summary judgment [Doc. 25, p. 13]. Defendant does not address this specific procedural argument but makes clear that, in its view, "there is no further relief this Court can order that has not already been given" [Doc. 24, p. 16].

Federal Rule of Civil Procedure 12(d) states that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Both parties have submitted matters outside the pleadings to the Court [*see, e.g.*, Docs. 24-1, 24-2, 25-1, 25-2, 25-3]. Therefore, plaintiff's pending Rule 12(c) motion "must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Accordingly, the Court may review all materials submitted by the parties in ruling on cross motions for summary judgment, which are governed by the same standards of review (*see supra* Section II).

## B. Whether Defendant Complied with FOIA's Search Requirements

Plaintiff argues that defendant failed to comply with FOIA's requirement that ICE "search all locations likely to contain responsive records" because "OAQ refused to conduct that search, unilaterally deciding that it could not possibly have responsive records" [Doc. 25, p. 1]. She contends that OAQ must search its records since "[i]t would be strange beyond question if ICE's business and contracting division had no records relating to contracts requiring constant payments and accounting" [*Id.* at 8].

Defendant maintains that a senior advisor within OAQ appropriately reviewed plaintiff's request and determined that OAQ was unlikely to possess responsive documents [Doc. 26, pp. 2–3].

The parties agree that one Senior Advisor's statement in ICE's Declaration is critical to determining OAQ's FOIA compliance, though they dispute which inferences are properly drawn from the statement:

> (1) OAQ is not involved in the negotiation and overseeing of 287(g) agreements and (2) ICE does not have an Inter-Governmental Service Agreement with the Knox County, TN Sheriff's Office ("KCSO") and, therefore, OAQ did not have any responsive records. KCSO is a U.S. Marshalls Service ("USMS") site, meaning that the USMS has a signed IGSA with KCSO for KCSO to house USMS detainees there. The USMS allows ICE to ride on the existing IGSA the USMS has with KCSO for detainee bedspace. Under this arrangement, ICE can place task orders that fund the housing of ICE detainees with KCSO under the USMS IGSA. Because the Plaintiff requested records concerning either a 287(g) agreement or an IGSA between ICE and KCSO, records pertaining to the IGSA between the USMS and KCSO on which ICE is a rider, but not a signatory, would not have been considered responsive.

[Doc. 24-4, p. 14].

In determining whether a governmental agency has substantively[3] complied with § 552(a)(6)(A), courts generally focus on the agency's affidavits or declarations "providing reasonable detail of the scope of the search." C*areToLive*, 631 F.3d at 340. "In the absence of countervailing evidence or apparent inconsistency of proof, [such affidavits] will suffice to demonstrate compliance with the obligations imposed by the [Act]." *Id*. at 340–41 (internal quotations and citations omitted) (quoting *Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 489 (2d Cir.1999)); *see also Kohake v. Dep't of Treasury*, 630 F. App'x 583, 589 (6th Cir. 2015) (affirming district court's grant of summary judgment to government agency where "reasonable detail of the scope of the search . . . demonstrates that the [government] made a good faith effort to locate the requested documents and employed methods reasonably expected to produce the requested information.").

Defendant's declaration "demonstrates that the [government] made a good faith effort to locate the requested documents and employed methods reasonably expected to produce the requested information." *Kohake*, 630 F. App'x at 589. Specifically, the OAQ Senior Advisor explained that (i) "OAQ is not involved with the negotiation and overseeing of 287(g) agreements" and (ii) ICE's relationship with the Knox County Sheriff's Office is a "rider [on the USMS contract], but not a signatory" [Doc. 24-4, p. 14]. These explanations are rebuttably presumed to suffice for FOIA purposes "[i]n the absence of countervailing

---

[3] "Substantive" here is distinguished from timing requirements set forth by § 552(a)(6)(A)'s response deadlines. The Court takes up plaintiff's arguments about timing (i.e., failure to meet deadlines, failure to expedite processing) *infra* Section III(C).

evidence or apparent inconsistency of proof." C*areToLive*, 631 F.3d at 340–41. Ultimately, plaintiff fails to provide evidence sufficient to rebut this presumption.

First, plaintiff contends that "ICE's declaration fatally impales itself by admitting to not having searched locations it also determined were likely to have responsive records" [Doc. 25, p. 7]. Such a requirement—that an agency's initial search tasking binds the scope of all future search activities—does not appear in FOIA's statutes, nor does it make practical sense for government agencies responding to FOIA requests. By initially tasking the ERO and OAQ with searches, the ICE FOIA Office did not obligate itself to eventually produce *something* from those two offices; rather, this tasking was ICE's best guess as to where to start the requested search on the basis of its internal organization. The ICE FOIA Office also exercised appropriate discretion when making this initial determination because plaintiff's request did not specify the program offices to be searched and "the agency generally need not 'search every record system.'" *Campbell v. U.S. Dep't of Just.*, 164 F.3d 20, 28 (D.C. Cir. 1998), *as amended* (Mar. 3, 1999) (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir.1990)). The Court is unpersuaded by plaintiff's recasting of ICE's search methodology as an admission of noncompliance.

Second, plaintiff argues that ICE's explanation regarding pre-existing agreements between the KCSO and the USMS is merely an attempt to sidestep its disclosure requirements under FOIA [Doc. 25, p. 10]. While it is true that "FOIA requests are not a game of Battleship" and "the agency must liberally interpret the request and frame its search accordingly," *Gov't Accountability Project v. U.S. Dep't of Homeland Sec.*, 335 F. Supp.

9

3d 7, 12 (D.D.C. 2018), one agency responding to a FOIA request is not obligated to search the records of another government agency. *See Jud. Watch, Inc. v. Fed. Hous. Fin. Agency*, 646 F.3d 924, 928 (D.C. Cir. 2011) (holding that an agency was not obligated to disclose external documents because "[the] public cannot learn anything about agency decision making from a document the agency neither created nor consulted"). ICE explained that the IGSA agreement plaintiff sought exists between the USMS and KCSO—not between ICE and KCSO [Doc. 24-4, p. 14]. More than mere "wordplay" [Doc. 25, p. 11], this distinction justifies OAQ's determination that it "did not have any responsive records" [Doc. 24-4, p. 14]. Moreover, the defendant's declaration provides plaintiff with clear search parameters for a potential FOIA request with USMS, should she wish to pursue it.

Finally, plaintiff presents evidence that she claims "prove[s] that OAQ's failure to search prevented discovery of responsive records" [Doc. 25, p. 11]. In her attached exhibits, plaintiff shows email correspondence between Natasha Abbington, identified by signature as a "Contract Specialist" within OAQ, and KCSO personnel [Doc. 25-2, p. 1]. The exhibit also identifies Michelle Britton as a "Contract Specialist" within OAQ corresponding with Terry Wilshire at KCSO [*Id.* at 4]. The email correspondence centers on "U.S. Marshalls [sic] Service Agreement 74-13-0015," for which ICE appears to be "authorize[d] as a rider" [*See id.* at 2–4]. But this correspondence only affirms ICE's explanation regarding an inter-agency rider on USMS's contract with KCSO [*see* Doc. 24-4, p. 14; Doc. 25-2, p. 2 ("We are in receipt of the contract to authorize ICE as a rider on the U.S. Marshall's [sic] Service Agreement 74-13-0015.")]. Where an agency has provided "grounds [that] are

10

reasonable and consistent with the applicable law, the district court should uphold the government's position." *Rugiero*, 257 F.3d at 544. Plaintiff's email exhibits do not present a genuine issue of fact as to the likelihood of OAQ possessing responsive documents. *See Shurtleff v. U.S. Env't Prot. Agency*, 991 F. Supp. 2d 1, 11–12 (D.D.C. 2013) (rejecting plaintiff's emails as proof of an inadequate search where exhibits failed to "suggest[] the existence of documents that the [agency] could not have located without expanding the scope of its search.").

In sum, the Court finds that plaintiff has not "point[ed] to specific facts supported by evidence in the record demonstrating that there is a genuine issue for trial." *Chao*, 285 F.3d at 424. Accordingly, defendant's motion for summary judgment with respect to Counts I and II is **GRANTED** as to all substantive claims under § 552(a)(6)(A). Plaintiff's cross motion for summary judgment is **DENIED** as to the same.

### C. No Statutory Remedies Remain for Defendant's Delays

Plaintiff's remaining claims stem from defendant's initial failure to adhere to FOIA's statutory timeframes [Doc. 1, pp. 8–10]. Specifically, she alleges that defendant "violated and continues to violate" § 552(a)(6)(A)'s 20-day timeframe for an agency to respond to an initial FOIA request [*Id.* at 9]. Relatedly, she alleges that defendant "failed to ever decide [her] expedited processing request" under § 552(a)(6)(E), thereby entitling her to further relief [*Id.* at 10].

Defendant contends that an agency's failure to adhere to the statutory guidelines merely entitles the requester to "a direct path to judicial review" by way of constructive

11

Case 3:23-cv-00128-TAV-JEM   Document 27   Filed 09/20/24   Page 11 of 12   PageID #: 222

exhaustion [Doc. 24, p. 15]. In other words, plaintiff's ability to bring the instant suit without further appeals is her only statutory remedy [*Id.*].

The Court cannot grant plaintiff further relief under §§ 552(a)(6)(A), (E). Defendant's failure to adhere to FOIA's timeframes authorized plaintiff to bring this civil action without further delay. However, the statute does not provide for further remedies. *See* 5 U.S.C. § 552(a)(6)(E). Additionally, "[a] district court of the United States shall not have jurisdiction to review an agency denial of expedited processing of a request for records after the agency has provided a complete response to the request." 5 U.S.C. § 552(a)(6)(E)(iv). Accordingly, defendant's motion for summary judgment is **GRANTED** with respect to Count III; and with respect to Counts I and II insofar as they relate to the timing of ICE's response. Plaintiff's cross motion for summary judgment is **DENIED** as to the same.

## IV. Conclusion

For the reasons above, plaintiff's motion, construed as seeking summary judgment [Doc. 18] is **DENIED** and defendant's motion for summary judgment [Doc. 23] is **GRANTED**. This case is **DISMISSED**. An appropriate judgment order will follow.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE